**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS**


**JAMES DOUGLAS MOORE**,

      Plaintiff,

**v.**                                                    **Civil Action No. 2:12-CV-29
(BAILEY)**


**MICHAEL J. ASTRUE,
Commissioner of Social
Security**,

      Defendant.


<u>**ORDER ADOPTING REPORT AND RECOMMENDATION**</u>

On this day, the above-styled matter came before this Court for consideration of the Report and Recommendation ("R&R") of United States Magistrate Judge David J. Joel [Doc. 20] and the plaintiff's Objections thereto [Doc. 21].   Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is made.   However, failure to file objections permits the district court to review the R&R under the standards that the district court believes are appropriate, and under these circumstances, the parties' right to *de novo* review is waived.   *See* **Webb v. Califano**, 468 F.Supp. 825 (E.D. Cal. 1979).   Accordingly, this Court will conduct a *de novo* review only as to those portions of the R&R to which the plaintiff objected.   The remaining portions of the R&R  will be reviewed for clear error.   As a result, it is the opinion of this Court that the R&R should be **ADOPTED**.

## I.  Background

The plaintiff alleges that he became disabled on or about June 19, 2007[1] [Doc. 16 at 1].  The plaintiff states that he "has not worked since December 2004 due to his medical conditions.  The onset [date] of June 19, 2007[,] is due to [r]es [j]udicata from a previous final decision dated June 16, 2007"[2] [*Id.* at n.2].[3]  In his complaint, the plaintiff claims to suffer from depression, anxiety with agoraphobia, and a history of hemolytic anemia [Doc. 1 at 1].  On May 19, 2008, the plaintiff filed his most recent disability claim [*Id.* at 2].  The claim was denied on September 3, 2008, and again upon reconsideration on January 20, 2009 [*Id.*; Doc. 7-2 at 19].

On February 5, 2009, the plaintiff requested a hearing [Doc. 7-2 at 19].  A hearing

---

[1]The plaintiff alleges the disability date as August 19, 2007, in his complaint [Doc. 1 at 1].  However, this Court presumes that this date is a typographical error based upon the date alleged in the plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment [Doc. 16] as well as the June 18, 2007, decision regarding an earlier claim filed by the plaintiff [*See* Doc. 7-3 at 2-14].

[2]Although the plaintiff refers to the ALJ's decision as dated June 16, 2007, this Court notes that the ALJ's decision is actually dated June 18, 2007 [*See* Doc. 7-3 at 2-14].

[3]The plaintiff filed a former claim on March 3, 2005, alleging disability beginning on December 14, 2004, based upon his symptoms of anxiety and panic attacks [Doc. 7-3 at 5 and 7].  This former claim was initially denied on June 15, 2005, and upon reconsideration on January 11, 2006 [*Id.* at 5].  After the plaintiff's timely February 27, 2006, request for hearing, a hearing was held before Administrative Law Judge ("ALJ") Randall W. Moon [*Id.*].  On June 18, 2007, ALJ Moon issued an unfavorable decision regarding the plaintiff's former claim [*See id.* at 2].  ALJ Moon found that the plaintiff suffered from anxiety, but he held that it did not meet or equal one of the listed impairments [*Id.* at 7-10].  In addition ALJ Moon found that the plaintiff had the residual function capacity to perform all level of exertional work, with certain non-exertional limitations [*Id.* at 10-12].  ALJ Moon concluded that the plaintiff was unable to perform his past relevant work as an implementation director and team leader [*Id.* at 12-13].  However, the ALJ found that there were jobs that existed in significant numbers in the national economy that the claimant could perform, including a laundry worker or an office assistant [*Id.* at 13-14].

was held on May 11, 2010, before Administrative Law Judge ("ALJ") George A. Mills, III [Doc. 1 at 2; Doc. 7-4 at 21].  On June 8, 2010, ALJ Mills rendered an unfavorable ruling [Doc. 1 at 2; Doc. 7-2 at 16].  The ALJ determined that the plaintiff has (1) a history of hemolytic anemia, (2) depressive disorder, and (3) anxiety disorder/panic disorder with agoraphobia [Doc. 7-2 at 21-22]; however ALJ Mills found that these impairments or combination of impairments do not "meet[ ] or medically equal[ ] one of the listed impairments in 20 CFR Part 404, Subpart A, Appendix 1 . . ." [*Id.* at 22].  Although he found that the plaintiff could no longer perform his past work as an implementation director and team leader for a mental health agency [*Id.* at 26], ALJ Mills determined that, since June 19, 2007, the plaintiff "has had the residual functional capacity to perform a range of unskilled work activity"[4] [*Id.* at 23].  Accordingly, the ALJ ruled that the plaintiff is not disabled [*Id.* at 28].  The plaintiff filed a request for review of the ALJ's decision with the Appeals Council on June 17, 2010 [Doc. 1 at 2; Doc. 7-2 at 14-15].  The Appeals Council denied the request for review on February 16, 2012 [Doc. 1 at 2; Doc. 7-2 at 2-6].

On April 16, 2012, the plaintiff filed a complaint [Doc. 1] seeking judicial review of the June 8, 2010, adverse decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Pursuant to the Local Rules, this case was referred to Magistrate Judge Joel for a

---

[4]ALJ Mills specifically found the following:
Since June 19, 2007, the claimant has had the residual functional capacity to perform a range of unskilled work activity that: requires no more than a "light" level of physical exertion; requires no climbing of ladders, ropes, or scaffolds, or more than occasional performance of other postural movements . . . ; requires no exposure to temperature extremes of heat or cold, respiratory irritants . . . or hazards . . . ; requires no rapid production quotas; and requires no more than occasional contact with supervisors and coworkers and no contact with the general public (20 CFR 404.1567(b)).
Doc. 7-2 at 23.

3

recommended disposition.  On August 16, 2012, and September 17, 2012, the plaintiff and the defendant filed their respective motions for summary judgment [Docs. 15 & 17].  In the complaint and memorandum of law in support of his motion for summary judgment, the plaintiff states that the ALJ's decision should be reversed because the ALJ and the Appeals Council committed various legal errors [Doc. 1 at 3; Doc. 16 at 9-15].  First, the plaintiff asserts that the ALJ failed to follow the Treating Physician Rule [Doc. 16 at 9-12]. Second, the plaintiff alleges that the ALJ failed to properly evaluate Mr. Moore's credibility [*Id.* at 12-14].  Finally, the plaintiff argues that the Appeals Council failed to properly consider new evidence [*Id.* at 14-15].  In the brief in support of his motion for summary judgment, the defendant responds to each claim and argues that the ALJ's decision is supported by substantial evidence and that the Appeals Council properly declined to consider "new evidence" as a basis to review the ALJ's decision  [Doc. 18].

On October 10, 2012, Magistrate Judge Joel entered his R&R in which he concludes that the ALJ's decision denying the plaintiff's applications for disability and supplemental security income is supported by substantial evidence [Doc. 20 at 31].  As such, the magistrate judge recommends that the plaintiff's motion for summary judgment be denied and the defendant's motion for summary judgment be granted [*Id.* at 32].  The magistrate judge further recommends that the decision of the Commissioner be affirmed and the case dismissed with prejudice [*Id.*].  On October 22, 2012, the plaintiff filed timely objections [Doc. 21] to these conclusions in the magistrate judge's report and recommendation.  The defendant filed a response thereto on November 1, 2012 [Doc. 22].

## II.  Applicable Legal Standards

### A.  Judicial Review of an ALJ Decision

Judicial review of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied.  *See* 42 U.S.C. § 405(g).  "The findings . . . as to any fact, if supported by substantial evidence, shall be conclusive."  ***Richardson v. Perales***, 402 U.S. 389, 390 (1971); and ***Coffman v. Bowen***, 829 F.2d 514, 517 (4th Cir. 1987).  The phrase "'supported by substantial evidence'" means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *See* ***Perales***, 402 U.S. at 401 (*citing* ***Consol. Edison Co. v. NLRB***, 305 U.S. 197, 229 (1938)).  Substantial evidence "consists of more than a mere scintilla of evidence[,] but may be somewhat less than a preponderance . . .."  ***Laws v. Celebrezze***, 368 F.2d 640, 642 (4th Cir. 1966).  Thus, "[i]t is not within the province of a reviewing court to determine the weight of the evidence; nor is it [the court's] function to substitute [its] judgment . . . if [the] decision is supported by substantial evidence."  ***Id.*** (*citing* ***Snyder v. Ribicoff***, 307 F.2d 518, 520 (4th Cir. 1962)).  Ultimately, it is the duty of the ALJ reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence.  ***King v. Califano***, 599 F.2d 597, 599 (4th Cir. 1979).  "This Court does not find facts or try the case *de novo* when reviewing disability determinations." ***Id.***; *see also* ***Seacrist v. Weinberger***, 538 F.2d 1054, 1056-57 (4th Cir. 1976); and ***Hays v. Sullivan***, 907 F.2d 1453, 1456 (4th Cir. 1990).

### B.  Five-Step Evaluation Process

To determine whether a claimant is disabled, the ALJ considers the following five-

5

step evaluation process:

Step One:      Determine whether the claimant is engaging in substantial gainful activity;

Step Two:      Determine whether the claimant has a severe impairment;

Step Three:   Determine whether the claimant has a listed impairment (20 C.F.R. Part 404, Subpart P, Appendix 1) and conduct a Residual Functional Capacity ("RFC") assessment;

Step Four:     Consider the RFC assessment to determine whether the claimant can perform past relevant work; and

Step Five:     Consider the RFC assessment, age, education, and work experience to determine whether the claimant can perform any other work.

*See* 20 C.F.R. § 404.1520(a)(4) (2011).

Once the claimant satisfies Steps One and Two, he/she will automatically be found disabled if he/she suffers from a listed impairment and meets the duration requirement. ***Rhoderick v. Heckler***, 737 F.2d 714, 715 (7th Cir. 1984); 20 C.F.R. § 404.1509.  If the claimant does not have listed impairments but cannot perform his/her past work, the burden shifts to the Commissioner to show that the claimant can perform some other job. ***Rhoderick***, 737 F.2d at 715.

### III.  Discussion

At Step One, the ALJ determined that the plaintiff had not engaged in substantial gainful activity since June 19, 2007 [Doc. 7-2 at 21].  At Step Two, the ALJ held that the plaintiff "has had the following medically determinable impairments that, either individually or in combination, are 'severe' and have significantly limited his ability to perform basic work activity for a period of at least 12 consecutive months:  history of hemolytic anemia;

depressive disorder; and anxiety disorder/panic disorder with agoraphobia [*Id*.].  The ALJ noted that the claimant also alleged disability based upon chronic fatigue and immune dysfunction syndrome; however, the ALJ found that the medical evidence "did not contain any diagnosis or treatment for this alleged impairment" [*Id.* at 22].  At Step Three, the ALJ found that the plaintiff did not meet a listing impairment [*Id.* at 22-23] and had the RFC to perform a range of light work as defined in 20 C.F.R. 404.1567(b) [*Id.* at 23-26].  At Step Four, the ALJ determined that the plaintiff was unable to perform past relevant work [*Id.* at 26].  At Step Five, the ALJ ruled that the "there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform . . ." [*Id.* at 27].

In his R&R, the magistrate judge recommends that this Court affirm the ALJ's decision [Doc. 20 at 32].  On October 22, 2012, the plaintiff filed timely objections [Doc. 21], taking issue with the conclusions of the magistrate judge; the defendant filed a response to the plaintiff's objections [Doc. 22] on November 1, 2012.  This Court will address the objections as they relate to each of the plaintiff's claims of error discussed above.  In so doing, the Court will determine, *de novo*, whether any claim of error necessitates a finding that the ALJ's decision is not supported by substantial evidence.

### A.  The Treating Physician Rule

The plaintiff objects to the magistrate judge's conclusion that the ALJ did not violate the treating physician rule.

#### 1.  Applicable Legal Standard

In evaluating the opinions of treating sources, an ALJ must generally give more weight to the opinion of a treating physician because the physician is most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability.  See 20 C.F.R. §

404.1527(c)(2).  Nevertheless, a treating physician's opinion is afforded "controlling weight only if [the following] two conditions are met: (1) [the opinion] is supported by clinical and laboratory diagnostic techniques and (2) [the opinion] is not inconsistent with other substantial evidence."  ***Ward v. Chater***, 924 F.Supp. 53, 55 (W.D. Va. 1996); *see also* 20 C.F.R. § 404.1527(a) and 20 C.F.R. § 416.927(c)(2).

If the ALJ determines that a treating physician's opinion should not be accorded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. § 404.1527(c)(1)-(6).  These factors include: (a) examining relationship, (b) treatment relationship, (c) length of the treatment relationship and frequency of evaluation, (d) nature and extent of the treatment relationship, (e) supportability of the opinion, (f) consistency between the opinion and the record as a whole, (g) whether the treatment source is opining within his or her specialization, and (h) any other factors that tend to support or contradict the opinion.  20 C.F.R. § 404.1527(c)(1)-(6).  In addition, the regulations state that the Commissioner "will always give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion." § 404.1527(c)(2).  In this regard, Social Security Ruling 96-2p provides that those decisions "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, *5 (July 2, 1996).

### 2. The Parties' Arguments

The plaintiff argues that the ALJ improperly discounted the opinions of Dr. David Colvin, a treating physician [Doc. 9-12].  In his R&R, the magistrate judge concludes that the ALJ properly followed the Treating Physician Rule for the following reasons:  (1) Dr.

8

Colvin's opinion that the plaintiff would not be able to maintain work in a competitive work environment is not medical evidence and, therefore, not subject to controlling weight; (2) the ALJ provided specific reasons for assigning Dr. Colvin's opinion little weight; (3) the ALJ noted that Dr. Colvin's opinion is contradicted by other substantial evidence in the record; (4) the ALJ assigned greater weight to noncontradictory evidence provided by two state agency psychologists and the plaintiff's second treating psychiatrist, Dr. Attia; and (5) the ALJ did not reject all of Dr. Colvin's medical opinions, but merely afforded little weight to opinions that were not consistent with substantial evidence in the record [Doc. 20 at 21-25].

The plaintiff objects to the magistrate judge's conclusion on this issue, stating that the ALJ's reasons were not sufficient to discount the opinions of Dr. Colvin [Doc. 21 at 1-7]. In particular, the plaintiff argues that the ALJ's conclusion that Dr. Colvin's opinion conflicted with findings by the state agency psychologists and Dr. Attia is not a specific finding that is sufficient for a full and fair judicial review because the ALJ did not identify any such conflict [*Id.* at 2]; the plaintiff states that Dr. Colvin's opinions were actually well-supported and uncontradicted by other substantial evidence [*Id.* at 6- 7]. The plaintiff also argues that, contrary to the ALJ's and magistrate judge's conclusions, his reported daily activities do not conflict with any psychiatric limitations [*Id.* at 3-4]. In addition, the plaintiff argues that the magistrate judge's conclusion that the ALJ properly rejected Dr. Colvin's opinion regarding the plaintiff's inability to work as directly pertaining to the issue of disability fails to distinguish between legal conclusions and medical opinions [*Id.* at 4-5]. The defendant responds to the plaintiff's objections by arguing that the R&R appropriately found substantial evidence to support the ALJ's allocation of less weight to Dr. Colvin's

9

opinion [*Id.* at 2-4]. In particular, the defendant states that the ALJ (1) reviewed the medical record in detail, (2) cited the contradiction between Dr. Covlin's report and the other evidence, and (3) referred to the various daily activities that further supported the ALJ's findings [*Id.*].

### 3.   Analysis

In his decision, the ALJ noted that Dr. David Colvin, M.D., treated the plaintiff's anxiety, depression, and panic attacks with medication and relaxation techniques from January 2005 to October 2008 [Doc. 7-2 at 24-25]. The ALJ further noted that, after Dr. Colvin retired, the plaintiff began seeing Dr. Safwat Attia, M.D. [*Id.* at 25]. The ALJ stated that he considered the July 8, 2008, opinion of Dr. Colvin that the claimant was not capable of maintaining work in a competitive work environment because of the claimant's anxiety and panic attacks;" however, the ALJ decided to "accord[ ] it less weight than the state agency psychologists' opinions . . ." for various reasons [Doc. 7-2 at 26].[5]

This Court first notes that Dr. Colvin's opinion directly relates to the plaintiff's ability to return to work.   Opinions regarding whether a person is "disabled" or "unable to work"

---

[5]The ALJ specifically stated the following:
Dr. Colvin opined that the claimant was incapable of maintaining work in a competitive work environment due to [the claimant's] anxiety and panic attacks which created a marked limitation in social functioning (Exhibit B2F). The undersigned notes that determinations as to whether an individual is disabled are an administrative finding that is reserved to the Commissioner (SSR 96-5p). Further, Dr. Colvin's assessment is not supported by the medical evidence of record which indicates a decrease in his symptoms due to this medication (Exhibits B11F/2, 3, B11F and B13F). Further, the claimant's ability to occasionally drive to the store and purchase gardening items is inconsistent with a marked limitation in his ability to interact with the general public and his reported inability to leave his house due to agoraphobia (Exhibit B2F/4).
[Doc. 7-2 at 26].

pertain to an administrative finding that is reserved for the Commissioner.  *See* SSR 96-5p, 1996 WL 374183, *5 (July 2, 1996).  As such, although such opinions should not be disregarded, they are "never entitled to controlling weight or given special significance," even when such opinions are offered by a treating source.  *Id.*  To the extent that Dr. Colvin's opinion that the claimant will not be able to return to work is an administrative finding reserved for the Commissioner, it is not entitled to controlling weight, despite the fact that Dr. Colvin was a treating physician.  *See* SSR 96-5p, 1996 WL 374183 (July 2, 1996).

However, even if this Court were to interpret Dr. Colvin's conclusion as a medical opinion regarding the plaintiff's prognosis, the ALJ is still permitted to give the conclusion less than controlling weight.  "The ALJ is not required in all cases to give the treating physician's opinion greater weight than other evidence; rather 'the ALJ holds [the] discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence.'" ***Johnson v. Barnhart***, 434 F.3d 650, 654 at n.5 (4th Cir. 2005) (alterations in original) (citing ***Mastro v. Apfel***, 270 F.3d 171, 178 (4th Cir. 2001)); *see also* ***Craig v. Chater***, 76 F.3d 585, 590 (4th Cir. 1996) (If a treating physician's opinion "is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.").

At the time that Dr. Colvin provided his opinion regarding the plaintiff's inability to maintain work in a competitive work environment, the plaintiff was receiving treatment from Dr. Colvin approximately every six weeks [Doc. 7-7 at 15].[6]  In his July 8, 2008, narrative,

---

[6]Although Dr. Colvin stated in his July 8, 2008, narrative that the plaintiff saw him every few weeks for treatment [Doc. 7-7 at 14], Dr. Colvin stated in the

Dr. Colvin stated that "Mr. Moore had some response to the medication but no complete resolution of his symptoms and his functioning has never returned to the point he could resume work" [Doc. 7-7 at 1].  In the related July 8, 2008, questionnaire, Dr. Colvin noted that the plaintiff had an "inability to leave home because of agoraphobia" [Doc. 7-7 at 17]. In addition, Dr. Colvin noted that "Mr. Moore has great difficulty tolerating being around people & often flees the situation" [Doc. 7-7 at 20].  Dr. Colvin also stated that "Mr. Moore has marked anxiety with even a small number of people.  He frequently must leave the situation to go to a place of safety" [Doc. 7-7 at 21].  The ALJ specifically noted the plaintiff's ability to go to the store to buy items when deciding to accord Dr. Colvin's opinion on this issue less than controlling weight.  As such, the ALJ properly used his discretion to give Dr. Colvin's conclusion less than controlling weight in light of persuasive evidence contrary to the treating physician's foundation for his conclusion.  *See Johnson*, 434 F.3d at 654 at n.5.

Accordingly, this Court hereby **OVERRULES** the plaintiff's objections on this issue. For these reasons and those more fully stated in the magistrate judge's R&R, this Court finds that substantial evidence supports the ALJ's decision to give Dr. Colvin's July 8, 2008, opinion less than controlling weight [See Doc. 7-2 at 26].

## B.  Evaluating the Claimant's Credibility

The plaintiff objects to the magistrate judge's conclusion that the ALJ properly considered the plaintiff's credibility.

---

psychiatric/psychological impairment questionnaire that the frequency of treatment was six weeks [*Id.* at 15].  This Court relies upon the more precise statement of every six weeks as opposed to the more vague statement of every few weeks.

1.  Applicable Legal Standard

An ALJ's credibility analysis is a two-step process:

First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the individual's pain or other symptoms. . . .

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. . . .

SSR 96-7p, 1996 WL 374186, *2 (July 2, 1996).

In addition to the objective medical evidence, the adjudicator shall consider the following factors when additional information is needed for the credibility analysis:

1.  The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3.  Factors that precipitate and aggravate the symptoms;

4.  The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5.  Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6.  Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 or 20 minutes every hour, or sleeping on a board); and

7.  Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *3.

### 2.  The Parties' Arguments

The plaintiff argues that the ALJ failed to properly evaluate his credibility [Doc. 16 at 12-14].  In his R&R, the magistrate judge concludes that the ALJ properly evaluated the plaintiff's credibility for the following reasons: (1) the ALJ did not find the plaintiff's statements to be credible to the extent that those statements were inconsistent with the plaintiff's residual functional capacity assessment; and (2) in support of his conclusion regarding the plaintiff's credibility, the ALJ cites a variety of medical evidence, the plaintiff's reported activities, and notations in medical reports regarding plaintiff's statements to physicians on the progress of his treatment [Doc. 20 at 25-29].

The plaintiff objects to the magistrate judge's conclusion, arguing that the ALJ failed to explain how the plaintiff's minimal daily activities or response to therapy demonstrate that the plaintiff could work in a competitive job [Doc. 21 at 7-8].  In addition, the plaintiff argues that the ALJ's decision failed to give any meaningful reason for not finding the plaintiff credible [*Id.* at 8-9].  The defendant responds that the magistrate judge's conclusion on this issue is correct because the ALJ evaluated the plaintiff's symptoms in accordance with the two-step test and considered the various factors addressed in SSR 96-7p [Doc. 22 at 4-5].  In addition, the defendant argues that the ALJ carefully cited the record and evidence in support of his credibility determination [*Id.* at 5].

### 3.  Analysis

At step one of the credibility analysis, the ALJ found that the plaintiff has severe impairments, including a history of hemolytic anemia, depressive disorder, and anxiety disorder/panic disorder with agoraphobia [Doc. 7-2 at 11].  Additionally, the ALJ noted that the claimant also alleged disability based upon chronic fatigue and immune dysfunction

14

syndrome; however, the ALJ found that the "medical evidence of record did not contain any diagnosis or treatment for this alleged impairment [*Id.* at 22].

At step two, however, the ALJ questioned the plaintiff's subjective complaints regarding the intensity, persistence, and limiting effects on his ability to do basic work activities [Doc. 7-2 at 22-26]. In so doing, the ALJ considered the plaintiff's daily activities, social and mental functioning, and medical evidence [*Id.*]. The ALJ specifically found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the [claimant's] [RFC] assessment" [*Id.* at 24]. The ALJ further stated that he "does not find the claimant to be entirely credible and does not fully accept his subjective statements concerning his symptoms and limitations" [*Id.*].

This Court finds that the ALJ properly considered the plaintiff's daily activities in assessing the plaintiff's credibility. *See* SSR 96-7p, 1996 WL 374186 at *3 (directing review of daily activities as well as other factors). With regard to the plaintiff's daily activities, the ALJ found that "these activities appear inconsistent with the frequency and debilitating degree of symptoms alleged" [Doc. 7-2 at 24]. The ALJ noted that, despite the plaintiff's claim of severe anxiety and panic attacks, the plaintiff has had no hospitalization or emergency room visits [*Id.*]. In addition, the ALJ noted that the plaintiff testified that he is able to complete personal care tasks, including maintaining proper hygiene, preparing his meals, and doing the laundry [*Id.*]. The ALJ further noted that the plaintiff testified that he was able to complete various chores outside, such as moving the lawn, maintaining a garden, growing produce for sale [*Id.*]. The ALJ also referred to the plaintiff's ability to use a computer and drive [*Id.*].

15

In addition, this Court finds that the ALJ properly considered the plaintiff's social and mental functioning as part of his credibility analysis of the plaintiff. *See* SSR 96-7p, 1996 WL 374186 at *3 (directing review of various factors including the following: "[a] The location, duration, frequency, and intensity of the individual's pain or other symptoms; . . . [b] Factors that precipitate and aggravate the symptoms; . . . and [c] Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms"). With regard to the plaintiff's social functioning, the ALJ noted that, despite the plaintiff's testimony about having difficulty leaving the house based upon his agoraphobia, the plaintiff said that he is able to occasionally go to the store to purchase items when fewer people are present [Doc. 7-2 at 22 and 24]. With regard to the plaintiff's mental functioning, the ALJ noted that, despite the plaintiff's reported difficulties with concentration, memory, understanding, and following directions, the plaintiff is able to maintain a garden and grow enough produce for sale by a friend at a farmer's market [Doc. *Id.* at 22].

This Court also finds that the ALJ properly considered the plaintiff's medical evidence in assessing the plaintiff's credibility. *See* SSR 96-7p, 1996 WL 374186 at *3 (directing review of various factors including the following: "[a] the location, duration, frequency, and intensity of the individual's pain or other symptoms; . . . [b] The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; [c] Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; [and d] Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 or 20 minutes every hour, or sleeping on a board) . . . "). With regard to the plaintiff's medical evidence, the ALJ noted that the plaintiff has

16

never had to seek emergency care or hospitalization for his symptoms [Doc. 7-2 at 24-25].

The ALJ also noted that the plaintiff only complained of fatigue with regard to the hemolytic

anemia, for which the plaintiff does not report any impact on his daily activities [*Id.* at 24].

The ALJ discussed the plaintiff's reported improvements with regard to his symptoms

related to his depressive disorder and panic attacks with agoraphobia [*Id.* at 24-25].  In

addition, the ALJ discussed notations in the reports of various physicians that supported

such reported improvements [*Id.* at 25].

      The plaintiff argues that the magistrate judge failed to provide adequate reasons for

his credibility determinations.[7]  However, in making his credibility determination, the ALJ

specifically cited to the medical record[8] [9] and pointed to various inconsistencies in the

---

[7]The plaintiff cites to the following cases in support of this argument:
***Moss v. Astrue***, 555 F.3d 556, 562 (7th Cir. 2009) (error when the ALJ placed undue weight on claimant's activities inside the home as consistent with working outside the home); ***Villano v. Astrue***, 556 F.3d 558, 562 (7th Cir. 2009) (it is not enough to describe a claimant's activities without explaining how they are inconsistent with the limitations claimed); ***Bjornson v. Astrue***, 671 F.3d 640, 647 (7th Cir. 2012) (failure of ALJ's [*sic*] to recognize the difference in performing activities of daily living with flexibility and help from others and performing to the standard required by an employer at a full-time job "is a recurrent, and deplorable feature of opinions by administrative law judges in social security disability cases").
[Doc. 21 at 7-8].

[8]This case is distinguishable from ***Villano***, which the plaintiff cites in support of his argument, because the ALJ in this case cited to medical evidence in support of his credibility determination. 556 F.3d at 562.  In ***Villano***, the Seventh Circuit Court of Appeals ("Seventh Circuit") found that the ALJ's reference to a lack of medical evidence was not a sufficient basis for questioning the claimant's statement regarding limitations.  ***Id.***

[9]This case is distinguishable from ***Moss*** because, unlike in ***Moss***, there are no claims that the ALJ's assessment of the medical evidence was misleading and disregarded certain limitations that the claimant had in performing household activities.  *See* 555 F.3d at 562.

evidence.[10] As such, the ALJ provided a clear explanation[11] for his credibility determination. Based upon the ALJ's consideration of the appropriate factors and stated reasons for his credibility determination pertaining to the plaintiff, this Court **OVERRULES** the plaintiff's objection on this issue.

### C.  Consideration of New Evidence by the Appeals Council

The plaintiff objects to the magistrate judge's conclusion that the plaintiff's additional evidence that was submitted to the Appeals Council is not material evidence.

### 1.  Applicable Legal Standard

The Appeals Council must consider additional evidence that is submitted with a request for review in deciding whether to grant review "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." ***Wilkins v. Sec'y, Dep't of Health & Human Servs.***, 953 F.2d 93, 96 (4th Cir. 1991). Evidence that is new is neither duplicative nor cumulative. ***Id.*** "Evidence is material if there is a reasonable probability that it would have changed the outcome." ***Id.*** at 96 (citing ***Borders v. Heckler***, 777 F.2d 954, 956) (4th Cir. 1985)). Evidence relates to the period on or before the date of the ALJ's decision if it provides evidence of impairments at the time of the decision. *See **Johnson v. Barnhart***, 434 F.3d 650, 655-56 (4th Cir. 2005).

---

[10]This case is distinguishable from ***Villano*** also for this reason.  In ***Villano***, the Seventh Circuit found that the ALJ did not analyze how the evidence was inconsistent or consistent with the claimant's expressed pain and limitations when assessing the claimant's credibility.  556 F.3d at 562.

[11]This case is distinguishable from ***Villano*** for this reason as well.  In ***Villano***, the Seventh Circuit found that the ALJ did not explain why he found the claimant credible or not credible.  556 F.3d at 562.

"[I]f upon consideration of all of the evidence, including any new and material evidence, the Appeals Council finds the ALJ's action, findings, or conclusions not contrary to the weight of the evidence, the Appeals Council can simply deny the request for review." **Meyer v. Astrue**, 662 F.3d 700, 705 (4th Cir. 2011). The Appeals Council is not required to "articulate its rationale for denying a request for review." **Id.** at 705-06. In **Meyer**, the Fourth Circuit held that it could not determine, "from review of the record as a whole, if substantial evidence support[ed] the [ALJ's] denial of benefits" and remanded the decision for further proceedings to consider the probative value of the new and material evidence. **Id.** at 702. The **Meyer** court noted that the new evidence in that case conflicted with the evidence of record at the time of the ALJ's ruling and the case was not "as one-sided" as other cases in which substantial evidence supported the ALJ's ruling. **Id.** at 707. Moreover, the Fourth Circuit noted that the new evidence directly related to a gap in the evidence that the ALJ utilized as a basis for his ruling. **Id.**

## 2. The Parties' Arguments

The plaintiff argues that the Appeals Council failed to properly consider new evidence that the plaintiff submitted with his request for review [Doc. 16 at 14-15]. In his R&R, Magistrate Judge Joel concludes that the Appeals Council properly considered the additional evidence for the following reasons: (1) the Appeals Council considered the additional evidence, but concluded that the information does not provide a basis for changing the ALJ's decision; (2) the additional evidence merely builds upon evidence that was already in the record at the time of the ALJ's decision; and (3) the additional evaluation by Dr. Klein was prepared in anticipation of litigation at the request of the plaintiff's counsel

[Doc. 20 at 29-31].  The plaintiff objects to the magistrate judge's conclusion on this issue [Doc. 21 at 9-10]; in particular, the plaintiff argues that Dr. Klein's report is material even though other evidence also pertained to the plaintiff's psychiatric status [*Id.* at 9].   In addition, the plaintiff argues that the additional evidence directly conflicts with the ALJ's RFC conclusion and directly supports Dr. Colvin's opinion that the plaintiff could not be employed.  The defendant responds that the magistrate judge's conclusion on this issue is correct because the additional evidence was not material [Doc. 22 at 5-6].  In particular, the defendant argues that Dr. Klein's report merely tended to refer to the existing medical record that was already before the ALJ [*Id.* at 6].  In addition, the defendant argues that "many of [Dr. Klein's] findings simply are inconsistent with the longitudinal record" [*Id.*].

### 3.   Analysis

In its denial of review, the Appeals Council stated that it will review a case for various reasons, including the receipt of "new and material evidence and the decision is contrary to the weight of all the evidence now in the record" [Doc. 7-2 at 2].  In the plaintiff's case, the Appeals Council stated that it considered the plaintiff's arguments regarding the ALJ's decision; the Appeals Council also stated that it considered the additional evidence that the plaintiff submitted [Doc. 7-2 at 3].  This additional evidence included the following exhibits: (1) Exhibit B11E - Letter from attorney dated 05/06/2011 appealing the ALJ's ruling to the Appeals Council; (2) Exhibit B14F - 06/24/2010 Letter from Robert J. Klein, Ed.D, and 06/09/2010 Psychological Evaluation from Robert J. Klein, Ed.D.;[12] (3) Exhibit B15F -

---

[12]Dr. Klein's report discusses his assessment of the plaintiff.  Dr. Klein diagnosed the plaintiff with the same mental disorders previously discussed; however, Dr. Klein also diagnosed the plaintiff with (1) disorder of written expression and (2) avoidant personality disorder, which he says underlies the other three major mental disorders [Doc. 7-7 at 103].

06/10/2010 Psychiatric/Psychological Impairment Questionnaire from Robert J, Klein, Ed.D.;[13] and (4) Exhibit B16F - 09/24/2010-02/14/2011 Progress Notes from Dr. Safwat Attia[14] [*Id.* at 5].   However, the Appeals Council  "found that this information does not provide a basis for changing the Administrative Law Judge's decision" [*Id.* at 3].

Even if this Court were to determine that the evidence is new and relevant to the time of the ALJ's decision, this Court agrees with the Appeals Council's determination that the evidence is not material.  The plaintiff notes that Dr. Klein's finding that the plaintiff has marked mental limitations (1) supports Dr. Colvin's opinion regarding the plaintiff's inability to work and (2) conflicts with the ALJ's RFC conclusion [*Id.* at 9]; however, this is not sufficient to find that the Appeals Council erred in not finding the evidence material.  Even where evidence is subject to more than one rational interpretation, a court must uphold an ALJ's findings if those findings are supported by inferences reasonably drawn from the record.  *See* 42 U.S.C. § 405(g); *see also **Ludwig v. Astrue***, 681 F.3d 1047 (9th Cir. 2012) and ***Molina v. Astrue***, 674 F.3d 1104 (9th Cir. 2012).

This case is distinguishable from a recent ruling by this Court in which a social security decision was remanded to the ruling ALJ for additional fact-finding based upon new and relevant evidence.  *See **Boggs v. Astrue***, 2012 WL 5494566 (N.D. W.Va. Nov. 13, 2012).  The additional evidence in ***Boggs*** was objective medical evidence that directly related to a gap in the record regarding the claimant's physical limitations that the ALJ used

---

[13]Dr. Klein's questionnaire also identifies an avoidant personality disorder [Doc. 7-7 at 104].

[14]Dr. Attia's notes reflect concern expressed by the plaintiff about getting employment.  The notes also reflect that Dr. Attia decided to reduce the plaintiff's visits to every six months.

as a basis for the RFC assessment; as such, this Court determined that the evidence was material.  In this case, the ALJ noted some gaps in the record relating to the severity of the plaintiff's psychological impairments; however, the additional evidence does not relate to those referenced gaps.[15]  The evidence merely provides an additional assessment of the plaintiff's mental health and limitations.  Moreover, the ALJ did not merely rely upon a gap in the record; the ALJ also pointed to substantial evidence in the record supporting his decision.  As such, this Court does not find the additional evidence in this case to be material.

To the extent that the plaintiff points to the Global Assessment of Functioning ("GAF") score in Dr. Klein's report as a basis for finding the additional evidence material,[16] this Court rejects the plaintiff's argument.  Conflicting GAF scores do not establish that the evidence would have likely caused a different ruling by the ALJ.  When evaluating opinion evidence, "more weight is given to longitudinal opinion evidence." *Foster v. Astrue*, 2012 WL 243253, *8 (C.D. Cal. Jan. 23, 2012) (citing 20 C.F.R. § 416.927(d)(2)) (explaining why a GAF score, which is merely a "snapshot assessment," could be discredited by the ALJ where the longitudinal evidence reflects improvement).  The ALJ pointed to longitudinal evidence in the record that supported his conclusions regarding the severity of the plaintiff's

---

[15]When assessing the severity of the plaintiff's symptoms, the ALJ referenced a lack of evidence regarding (1) any emergency room visits or hospitalization for his panic attacks, (2) any panic attacks that lasted for an extended amount of time, (3) any counseling or therapy [*See* Doc. 7-2 at 22 and 25].  However, the additional evidence does not pertain to any of these gaps in the evidence on which the ALJ relied.

[16]On June 9, 2010, Dr. Klein concluded that the plaintiff's "[GAF] may have been at a 50 in the past year and never at a 65.  It has decreased to 45 at best."  The plaintiff argues that this evidence directly controverts the GAF score of 65 that Dr. Atta recorded in February 2009.

limitations as well as his RFC assessment of the plaintiff.  Therefore, this Court does not find any error with the Appeals Council determination that the additional evidence is not material.

In addition, to the extent that the plaintiff argues that the evidence contained in Dr. Klein's report is material because it supports Dr. Colvin's opinion regarding the plaintiff's inability to work, this Court rejects the plaintiff's argument.  As previously noted by this Court, the disability determination is a legal conclusion reserved for the Commissioner and not a medical opinion that is entitled to controlling weight.  Moreover, even if the opinion regarding the plaintiff's inability to work were to be considered a prognosis, the ALJ pointed to substantial longitudinal evidence in the record contravening the severity of the limitations expressed by Dr. Colvin and the plaintiff.  However, the mere existence of contradictory additional evidence does not necessitate a finding that the evidence would have changed the ALJ's decision.  The ALJ cited to substantial evidence in making his ruling, despite the presence of contradicting evidence.  The addition of more contradicting evidence does not negate the substantial evidence on which the ALJ relied.  As noted by the Ninth Circuit Court of Appeals ("Ninth Circuit"), the evidence might support more than one rational interpretation; however, so long as the ALJ's ruling is supported by substantial evidence, it must be upheld.  *See **Ludwig***, 681 F.3d 1047, and ***Molina***, 674 F.3d 1104; *see also* 42 U.S.C. § 405(g).  Remand is required only where the additional evidence calls into question the fact that the ALJ's ruling is supported by substantial evidence.  *See **Meyer***, 662 F.3d at 707 (noting that the Fourth Circuit has affirmed the denial of benefits in cases where additional evidence was presented to the Appeals Council but the ALJ's decision was

supported by substantial evidence, but remanding the decision in that case because the Fourth Circuit "simply [could not] determine whether substantial evidence support[ed] the ALJ's decision").

As such, this Court finds no error with the Appeals Council's determination that the additional evidence was not likely to change the ALJ's ruling and was, therefore, not material. Accordingly, this Court hereby **OVERRULES** the plaintiff's objection on this issue.

## IV. Conclusion

Upon careful consideration, it is the opinion of this Court that the magistrate judge's Report and Recommendation **[Doc. 20]** should be, and hereby is, **ADOPTED**. Further, the plaintiff's Objections **[Doc. 21]** are **OVERRULED**. Therefore, this Court **ORDERS** that the defendant's Motion for Summary Judgment **[Doc. 17]** is hereby **GRANTED** and the plaintiff's Motion for Summary Judgment **[Doc. 15]** is hereby **DENIED**. Accordingly, this Court hereby **DENIES** and **DISMISSES** the plaintiff's Complaint **[Doc. 1]** and **ORDERS** that this matter be **STRICKEN** from the active docket of this Court. The Clerk is directed to enter a separate judgment in favor of the defendant.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record.

**DATED**:  November 26, 2012.

JOHN PRESTON BAILEY
CHIEF UNITED STATES DISTRICT JUDGE